UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN NURSES ASSOCIATION, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 08-2198 (RMC) |
| LISA JACKSON, Administrator, United States Environmental Protection Agency, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

Plaintiffs[1] complained on December 18, 2008, that Defendants Lisa Jackson, Administrator, and the Environmental Protection Agency had failed to perform a mandatory nondiscretionary duty under Section 304(a)(2) of the Clean Air Act, 42 U.S.C. § 7604(a)(2), by failing to promulgate final maximum achievable control technology emissions standards for hazardous air pollutants from coal- and oil-fired electric utility steam generating units ("EGUs"), as required by Section 112(d) of the Act, 42 U.S.C. § 7412(d). The Utility Air Regulatory Group ("UARG"), representing the utility industry, intervened as a defendant. On October 22, 2009, the EPA filed a notice and a proposed consent decree by which this matter would be resolved. EPA began the process of publication and receiving public comment as required by Section 113(g) of the

---

[1] Plaintiffs are the American Nurses Association, Chesapeake Bay Foundation, Inc., Conservation Law Foundation, Environment America, Environmental Defense Fund, Izaak Walton League of America, Natural Resources Council of Maine, Natural Resources Defense Council, Physicians for Social Responsibility, Sierra Club, The Ohio Environmental Council, and Waterkeeper Alliance, Inc.

Act, 42 U.S.C. § 7413(g). After receiving comments, EPA has decided not to withhold its consent and the Department of Justice concurs. EPA thus filed its Motion to Enter Consent Decree on February 24, 2010. *See* Dkt. # 25.

Unfortunately, Plaintiffs and EPA did not consult with, or notify, Intervenor-Defendant UARG of the proposed consent decree. UARG filed a protest to the terms of the decree, which the parties briefed. The Court heard oral argument on April 13, 2010. For the reasons that follow, the Court will approve the consent decree.

## I. ANALYSIS

The proposed consent decree has three terms that UARG contends must be changed. First, UARG wants Paragraph 4 of the proposed consent decree revised to eliminate the reference to § 112(d) standards and instead require EPA to take "final agency action" by an appropriate deadline. Second, UARG wants the deadline for the notice of proposed rulemaking extended by three months. Third, UARG wants the time between the notice of the proposed rulemaking and the notice of final rulemaking extended to one year, with at least four months for public comments. *See* Response of Intervenor-Def. to Mot. to Enter Consent Decree [Dkt. # 26] at 5-7.

The Court concludes that none of these objections warrants rejecting the proposed consent decree. It is the Administrator's legal position that she is under a mandatory, non-discretionary duty to issue emission standards for coal- and oil-fired EGUs because they were listed as a source category under § 112(c) of the Act, 42 U.S.C. § 7412(c), in 2000. *See* Defs.' Reply [Dkt. # 29] at 3. A consent decree is not a court "order," *Local Number 93, International Association of Firefighters, AFL-CIO, C.L.C. v. City of Cleveland*, 478 U.S. 501, 519 (1986), and by entering this consent decree the Court is only accepting the parties' agreement to settle, not adjudicating whether

the EPA's legal position is correct. If necessary, UARG can challenge EPA's final rule and its legal position.

UARG attacks the time frame within which EPA intends to conduct the subject rulemaking as totally insufficient to allow the industry to participate fully. EPA has committed that "[n]o later than March 16, 2011," it shall sign for publication in the Federal Register a notice of proposed rulemaking that will alert the industry to EPA's proposed emission standards. *See* Proposed Consent Decree [Dkt # 25] ¶ 3. Further, EPA has committed that "[n]o later than November 16, 2011," it will sign for publication its notice of final rulemaking. *Id.* ¶ 4. The Court appreciates the industry's concern that this schedule may be too hasty for the critical and expensive regulatory decisions that will be made; however, the proposed Consent Decree allows for a change of schedule if need be. *Id.* ¶ 6 ("Any provision of this Consent Decree may be modified by written stipulation executed by counsel for the Parties and filed with the Court. In addition, any provision of this Consent Decree may be modified by the Court upon motion by any Party to this Consent Decree, for good cause shown, and upon consideration of any response by the non-moving Party.").[2] If the science and analysis require more time, EPA can obtain it. In the meantime, as the Plaintiffs pointedly note, these emissions were listed in 2000 and more than a decade will have passed before they are regulated.

At oral argument, the Court expressed its concern that the Plaintiffs and EPA failed completely to include UARG, despite its party status, in the negotiations leading to the proposed

---

[2] As a non-party to the Consent Decree, UARG could not petition the Court directly for an extension of the schedule. However, EPA has a duty to accommodate both Plaintiffs and the industry as it develops any regulation; UARG could, if needed, persuade EPA to give its members more time for comment.

Consent Decree. Plaintiffs assured the Court that this practice is the norm and EPA cited *Local Number 93, International Association of Firefighters, AFL-CIO, C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986), in support. *Local Number 93* concerned a consent decree that provided remedies for minority firefighters who had been deprived of promotions. "Local 93 and the United States also challenge the validity of the consent decree on the ground that it was entered without the consent of the Union," *id.* at 528, who had intervened as of right. The Court explained:

> A consent decree is primarily a means by which parties settle their disputes without having to bear the financial and other costs of litigating. It has never been supposed that one party – whether an original party, a party that was joined later, or an intervenor – could preclude other parties from settling their own disputes and thereby withdrawing from litigation. Thus, while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent.

*Id.* at 528-29. UARG has raised not insubstantial concerns with the proposed Consent Decree but the Court cannot now gauge the adequacy, or lack thereof, of the schedule. Should haste make waste, the resulting regulations will be subject to successful challenge. If EPA has correctly estimated the speed with which it can do the necessary data gathering and analyses, harmful emissions will be sooner reduced. If EPA needs more time to get it right, it can seek more time.

## II. CONCLUSION

For the foregoing reasons, the Court will grant EPA's Motion to Enter Consent Decree [Dkt. # 25] and will, on this date, execute the Consent Decree. A memorializing Order accompanies this Memorandum Opinion.

Date: April 15, 2010                                  /s/
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge